FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 17, 2024

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOUGLAS S.,[1] | No. 1:23-cv-03049-MKD |
| Plaintiff, | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| v. | **ECF Nos. 8, 10** |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, [2] | |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kililo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' briefs.[3]  ECF Nos. 8, 10.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court affirms the Commissioner's decision.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

---

[3] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No. 8. However, the supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

ORDER - 2

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

416.902(a).  Further, a district court "may not reverse an ALJ's decision on

account of an error that is harmless."  *Id*.  An error is harmless "where it is

inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115

(quotation and citation omitted).  The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S.

396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

ORDER - 4

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, the analysis concludes with a finding that the claimant is disabled and

is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d

386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

On June 14, 2018, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of September 15, 2011.[4]  Tr. 16, 71-72, 207-14.  The applications were

_____

[4] Plaintiff previously applied for Title II and Title XVI benefits on November 18,

2015; the application was denied initially and on reconsideration, and on

ORDER - 6

denied initially and on reconsideration.  Tr. 127-42, 145-58.  Plaintiff appeared

before an administrative law judge (ALJ) on May 7, 2020.  Tr. 37-65.  On June 2,

2020, the ALJ denied Plaintiff's Title XVI claim and dismissed Plaintiff's Title II

claim.  Tr. 13-32.  Plaintiff appealed the denial, resulting in a remand from this

Court.  Tr. 528-35.  Plaintiff appeared for a remand hearing on December 15, 2022.

Tr. 463-91.  On February 16, 2023, the ALJ again denied Plaintiff's claim.  Tr.

442-61.

       At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since June 14, 2018.  Tr. 447.  At step

two, the ALJ found that Plaintiff has the following severe impairments: aphakia,

exotropia, and vision loss of left eye; right knee degenerative joint disease; right

---

September 28, 2017, Plaintiff withdrew his request for a hearing.  Tr. 16.  Thus, the

reconsideration decision was administratively final.  *Id.*  The ALJ denied Plaintiff's

implied request for reopening the prior claims.  Tr. 16-17.  The 2023 ALJ decision

addresses only Plaintiff's SSI claim.  Tr. 445-55.  Plaintiff also addresses only his

SSI claim.  ECF No. 8.  Thus, any challenge to the SSD determination is waived.

*See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

2008).

ORDER - 7

hip internal derangement; obesity; obstructive sleep apnea; mild bilateral facet arthropathy of the spine at L5-S1; and mild scoliosis. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 448. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] is limited to standing and walking is limited to 4 hours in an 8-hour workday; he can occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, or crawl; he is limited to frequent depth perception and near vision; and he is limited to no concentrated exposure to hazards including working at unprotected heights or around dangerous moving machinery.

*Id.* (as written).

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 454. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as assembly line worker, buckle inspector, and electronics sorter. Tr. 455. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the application date through the date of the decision. *Id.*

Per 20 C.F.R. § 416.1484 the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

ORDER - 8

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-three analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 8 at 7-8.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his consideration of the opinion of William Drenguis, M.D. *Id.* at 10-15.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

ORDER - 9

416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id*.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.  However, the ALJ is not required to make specific findings regarding the

ORDER - 11

relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

Dr. Drenguis, an examining source, conducted consultative physical examinations in 2016 and 2019, and rendered two opinions on Plaintiff's functioning. Tr. 319-25, 373-78. Plaintiff challenges only the ALJ's consideration of the 2019 opinion. ECF No. 8 at 10-15. The Court discusses the 2016 opinion and analysis to provide background.

On January 7, 2016, Dr. Drenguis diagnosed Plaintiff with right shoulder internal derangement; lumbar pain; cervical pain; history of right knee pain; and history of right hip pain. Tr. 324. Dr. Drenguis opined Plaintiff is limited to at least two hours of standing/walking and sitting six hours in; he uses a single point cane that is not prescribed, but "is needed for long distances on uneven terrain"; he is able to lift/carry 50 pounds occasionally and 25 pounds frequently; he can occasionally climb steps, stairs, ladders, scaffolds, and ropes, and occasionally stoop, crouch, crawl, and kneel; he can frequently reach forward, handle, finger, and feel, and occasionally reach overhead. Tr. 325. The ALJ found Dr. Drenguis' 2016 opinion was not persuasive. Tr. 453.

During the 2016 examination, Dr. Drenguis noted Plaintiff exhibited poor effort on the examination. *Id.* (citing Tr. 321). Dr. Drenguis stated Plaintiff was

1    generally cooperative, but "multiple inconsistencies are noted," and gave examples

2    including inconsistencies between his strength testing and range of motion testing.

3    Tr. 321.  He stated "[p]oor effort was given during strength testing."  *Id.*  While

4    Plaintiff had a "marked decrease in range of motion of his cervical spine" during

5    testing, he was "able to move his neck without impairment."  *Id.*  While his grip

6    strength was decreased on testing, he was able to "strongly grip his cane and uses it

7    for balance."  *Id.*  While he had abnormal range of motion in his neck on exam, as

8    discussed *supra*, he had "markedly increased range of motion" throughout the

9    interview.  Tr. 323.  Dr. Drenguis stated it was "difficult to assess the severity of

10   his problems, secondary to inconsistencies and poor effort."  Tr. 324.  The ALJ

11   found Dr. Drenguis' 2016 opinion was unpersuasive, and noted it was remote in

12   time, unsupported by the examination, inconsistent with the overall record,

13   including the medical evidence, limited treatment, and Plaintiff's activities of daily

14   living.  Tr. 453.

15        On January 25, 2019, Dr. Drenguis rendered a second opinion.  Tr. 373-78.

16   Dr. Drenguis diagnosed Plaintiff with cervical spine pain; low back pain; right

17   knee degenerative joint disease; right hip internal derangement; poor balance; and

18   decreased vision of the left high with history of traumatic cataract.  Tr. 377-78.  Dr.

19   Drenguis opined Plaintiff is limited to standing/walking at least two hours; sitting

20   at least four hours; he uses a medically necessary cane for all distances and all

ORDER - 13

terrains; he can lift 50 pounds occasionally and 25 pounds frequently; he should never balance and occasionally climb, stoop, kneel, crouch, and crawl; he can frequently reach, handle, finger, and feel; he is limited working at heights and around heavy machinery.  Tr. 378.  The ALJ found Dr. Drenguis' 2019 opinion was unpersuasive.  Tr. 453.

First, the ALJ found the opinion was only partially supported by the physical examination.  *Id.*  Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. § 416.920c(c)(1).  The examination documented some limitations in cervical and lumbar range of motion, but Plaintiff otherwise had normal range of motion, and had normal sensation and generally normal strength.  Tr. 453 (citing Tr. 376-77).  Plaintiff had an antalgic gait, that was less antalgic with a cane.  Tr. 376.  Plaintiff had normal grip, negative straight leg raise testing, generally normal strength, and normal sensation.  Tr. 376-77.  Plaintiff had abnormal range of motion in the neck and back, but his range of motion was otherwise normal.  *Id.*  Dr. Drenguis noted that Plaintiff gave full effort on this examination, and no inconsistencies were seen.  Tr. 376.

ORDER - 14

Plaintiff contends the ALJ repeated the previously rejected finding that the opinion was only partially supported by the examination.  ECF No. 8 at 12.  However, the analyses are not the same.  Tr. 25, 453.  The current ALJ decision addressed Plaintiff's generally normal sensation, strength, and range of motion.  Tr. 453.  The ALJ also found Dr. Drenguis' opinion that the cane is medically necessary is unsupported by the examination findings of nearly normal strength in the lower extremities and a variable gait.  *Id.*  The ALJ reasonably found Dr. Drenguis' opinion was only partially supported by the examination.

Second, the ALJ found the opinion was inconsistent with the overall medical record.  *Id*.  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  The ALJ found the opinion was inconsistent with the unremarkable images of Plaintiff's cervical spine and the only mild findings on the imaging of Plaintiff's lumbar spine.  Tr. 453.  Although Plaintiff had an abnormal gait, he had not had imaging of his knee or hip.  *Id.*

Further, the Court reads the ALJ's decision as a whole.  *See, e.g., Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).  The 2019 opinion indicates Plaintiff was more limited than the

1    2016 opinion.  The ALJ found the evidence was inconsistent with the 2016

2    opinion; as Dr. Drenguis found Plaintiff more limited in 2019, it is reasonable to

3    find the ALJ was also indicating that evidence was inconsistent with the 2019

4    opinion.  The ALJ stated Plaintiff's limited treatment for his reported neck and

5    back pain was inconsistent with the opinion.  Tr. 453.  While Dr. Drenguis opined

6    Plaintiff has significant physical limitations, Plaintiff has sought limited treatment

7    for his impairments.  Plaintiff was prescribed Cymbalta for pain in 2019, but did

8    not achieve four weeks of trial because he was worried about side effects.  Tr. 403.

9    In 2020, Plaintiff was not taking any specific medication for his back and he

10   declined physical therapy.  Tr. 451.  Plaintiff was not able to pursue epidural

11   injections without first trying physical therapy again.  Tr. 403.  While he reported

12   knee and hip pain, there are no workups for either joint.  *Id.*

13          The ALJ also found Dr. Drenguis' opinion was inconsistent with Plaintiff's

14   activities of daily living.  Tr. 453.  Plaintiff was independent in his activities of

15   daily living, including driving, handling his personal care, driving, preparing

16   meals, and shopping in stores.  Tr. 451, 453.  While Plaintiff offers an alternative

17   interpretation of the evidence, ECF No. 8 at 12-14, the ALJ reasonably found Dr.

18   Drenguis' opinion was inconsistent with the record.  *See Batson v. Comm'r of Soc.*

19   *Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (recognizing that when the

20   evidence in the record is subject to more than one rational interpretation, the court

ORDER - 16

defers to the ALJ's finding).  Plaintiff contends the ALJ failed to comply with the Appeals Council order by failing to address the consistency of the opinion and not contacting Dr. Drenguis to clarify his findings.  ECF No. 8 at 13.  However, the ALJ addressed the consistency of the opinion and the ALJ was not required to contact Dr. Drenguis.  *See* Tr. 538.  The ALJ did not err in his consideration of Dr. Drenguis' opinion.  Plaintiff is not entitled to remand on these grounds.

**B. Step Three**

Plaintiff contends the ALJ erred at step three by failing to find his impairments met or equaled Listing 1.18.  ECF No. 8 at 15-17.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even

ORDER - 17

1  considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for

2  disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

3      "To *meet* a listed impairment, a claimant must establish that he or she meets

4  each characteristic of a listed impairment relevant to his or her claim." *Tackett,*

5  180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a

6  listed impairment, a claimant must establish symptoms, signs and laboratory

7  findings 'at least equal in severity and duration' to the characteristics of a relevant

8  listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

9  20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and

10 none of them individually meets or equals a listed impairment, the collective

11 symptoms, signs and laboratory findings of all of the claimant's impairments will

12 be evaluated to determine whether they meet or equal the characteristics of any

13 relevant listed impairment." *Id*.  However, "'[m]edical equivalence must be based

14 on medical findings,'" and "'[a] generalized assertion of functional problems is not

15 enough to establish disability at step three.'" *Id*. at 1100 (quoting 20 C.F.R. §

16 404.1526(a)).

17     The claimant bears the burden of establishing her impairment (or

18 combination of impairments) meets or equals the criteria of a listed impairment.

19 *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

20 articulation of the reason(s) why the individual is or is not disabled at a later step in

ORDER - 18

the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listing 1.18.  Tr. 448. Listing 1.18 requires the claimant demonstrate an abnormality of a major joint in any extremity, documented by A, B, C, and D:

A) Chronic joint pain or stiffness;

B) Abnormal motion, instability, or immobility of the affected join(s);

C) Anatomical abnormality of the affected joint(s) noted on:

> 1. Physical examination (for example, subluxation, contracture, or bony or fibrous ankylosis); or

> 2. Imaging (for example, joint space narrowing, bony destruction, or ankylosis or arthrodesis of the affected joint); and

D) Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:

> 1. A documented medical need (see 1.00C6a) for a walker, bilateral cane, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving

ORDER - 19

fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.18.

The ALJ found Plaintiff did not meet Listing 1.18 because he only used a single point cane, and thus retained the ability to use his other free hand to carry out activities. Tr. 448. The ALJ did not address whether Plaintiff's impairments equaled Listing 1.18. Plaintiff contends Dr. Drenguis' opinion supports a finding his impairments equal Listing 1.18, because Dr. Drenguis opined Plaintiff could stand/walk/sit for a total of less than eight hours in a day, indicating Plaintiff would need to lie down during the day, which is "equivalent in severity if not more restrictive than the need to use two canes." ECF No. 8 at 16. However, the ALJ gave supported reasons to reject Dr. Drenguis' opinion, as discussed *supra*. Further, Dr. Drenguis did not explicitly state Plaintiff could stand/walk sit for less than eight hours; rather, Dr. Drenguis opined Plaintiff could stand and walk for "at least 2 hours," and sit for "at least 4 hours," which indicates Plaintiff may be able to sustain more than 6 hours in a day. Tr. 378. Dr. Drenguis also did not say Plaintiff would need to lay down during the day. Additionally, Dr. Dregnuis

ORDER - 20

opined Plaintiff was capable of lifting and carrying up to 50 pounds, which does not support a finding Plaintiff's impairments equal Listing 1.18.

Plaintiff contends the ALJ failed to give any analysis as to why Plaintiff did not meet or equal a listing. ECF No. 8 at 15. However, the ALJ provided an analysis as to why Plaintiff did not meet each of the relevant listings. Tr. 448. While the ALJ did not set forth an analysis regarding Plaintiff equaling each specific listing, Plaintiff did not present evidence at the hearing level to demonstrate he equaled a listing, thus the ALJ was not required to consider it. *See Ford v. Saul,* 950 F.3d 1141, 1157 (9th Cir. 2020) (citing *Burch,* 400 F.3d at 683). The ALJ also stated he considered Plaintiff's obesity, and found that even when considering the obesity, Plaintiff's impairments did not meet or equal a listing. Tr. 448. Plaintiff has not met his burden in demonstrating his impairments equal Listing 1.18. Plaintiff is not entitled to remand on these grounds.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 8 at 17-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or

1    other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

2    "The claimant is not required to show that [the claimant's] impairment could

3    reasonably be expected to cause the severity of the symptom [the claimant] has

4    alleged; [the claimant] need only show that it could reasonably have caused some

5    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

6         Second, "[i]f the claimant meets the first test and there is no evidence of

7    malingering, the ALJ can only reject the claimant's testimony about the severity of

8    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

9    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

10   omitted).  General findings are insufficient; rather, the ALJ must identify what

11   symptom claims are being discounted and what evidence undermines these claims.

12   *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

13   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

14   explain why it discounted claimant's symptom claims)).  "The clear and

15   convincing [evidence] standard is the most demanding required in Social Security

16   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

17   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

18        Factors to be considered in evaluating the intensity, persistence, and limiting

19   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

20   duration, frequency, and intensity of pain or other symptoms; 3) factors that

ORDER - 22

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 449.

*1. Inconsistent Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 449-52. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

ORDER - 23

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

However, the objective medical evidence is a relevant factor, along with the

medical source's information about the claimant's pain or other symptoms, in

determining the severity of a claimant's symptoms and their disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

First, the ALJ found that the imaging was inconsistent with Plaintiff's

contention that his disabling limitations cause him to spend 22 hours per day in

bed.  Tr. 450.  The imaging of Plaintiff's lumbar spine was unremarkable.  *Id.*

(citing Tr. 316-18, 264).  A 2019 MRI showed only mild facet arthropathy at L5-

S1.  Tr. 450 (citing Tr. 377).  Dr. Alexander noted the MRI showed no significant

derangement nor scoliosis, while Dr. Chang noted the imaging documented no disc

herniation or significant compression.  Tr. 450-51.  Imaging of the cervical spine

was normal, and Plaintiff had only mild scoliosis.  Tr. 450 (citing Tr. 377, 411).

Next, while Plaintiff had some abnormalities on examinations, the

examinations did not document the level of impairment expected for someone who

reportedly needs to spend 22 hours per day in bed.  Tr. 450-51.  Plaintiff had an

antalgic gait at some examinations, which improved with a cane, and he endorsed

pain, with some decreased sensation, but he also had normal range of motion,

reflexes, and strength.  *Id.* (citing, e.g., Tr. 376, 379-83, 404-05).  Dr. Hutarte

stated that the abnormal findings did not explain Plaintiff's demeanor, severe pain,

ORDER - 24

or disability, and he believed Plaintiff's pain issues were due to his weight and own

pain behaviors.  Tr. 450 (citing Tr. 404-05).  Plaintiff contends the ALJ erred in

ignoring treatment records that document antalgic gait, reduced mobility, poor

activity tolerance, weakness, and falls.  ECF No. 8 at 19.  Plaintiff largely relies on

his self-reported symptoms, rather than objective evidence.  *Id.* at 19-20.  Although

Plaintiff offers an alternative interpretation of the evidence, the ALJ's

interpretation is reasonable.  This was a clear and convincing reason, along with

the other reasons offered, to reject Plaintiff's symptom claims.  *See Batson*, 359

F.3d at 1198.

### 2.  Lack of Treatment

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's

lack of treatment.  Tr. 450-52.  An unexplained, or inadequately explained, failure

to seek treatment or follow a prescribed course of treatment may be considered

when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625,

638 (9th Cir. 2007).  When there is no evidence suggesting that the failure to seek

or participate in treatment is attributable to a mental impairment rather than a

personal preference, it is reasonable for the ALJ to conclude that the level or

frequency of treatment is inconsistent with the alleged severity of complaints.

*Molina*, 674 F.3d at 1113-14.

ORDER - 25

1    While Plaintiff was encouraged to try physical therapy, he had not yet

2 started physical therapy in June 2018. Tr. 450 (citing Tr. 345-46).  When he started

3 physical therapy, he attended only a couple sessions.  Tr. 451 (citing Tr. 329-37).

4 Plaintiff wanted to pursue injections as treatment for his pain but had not

5 completed the required course of physical therapy before being able to obtain the

6 injections.  Tr. 451.  In June 2020, he again declined physical therapy.  *Id.* (citing

7 Tr. 675-76).  Plaintiff was prescribed a CPAP machine but reported he was unable

8 to afford one.  Tr. 452.  The ALJ found there was no evidence Plaintiff attempted

9 to obtain financial assistance for the CPAP or a low-cost CPAP option.  *Id.*

10 Plaintiff contends he does not have the financial means for a CPAP, and he never

11 claimed to have tried to get financial assistance or a low-cost CPAP option.  ECF

12 No. 8 at 18.  However, any error in the ALJ's analysis of Plaintiff's sleep apnea

13 treatment is harmless, as the ALJ offered other supported reasons to reject

14 Plaintiff's symptom claims.  *See Molina,* 674 F.3d at 1115.

15    *3. Conservative Treatment*

16    The ALJ found Plaintiff's allegations were inconsistent with Plaintiff's

17 conservative treatment.  Tr. 450-51.  Evidence of "conservative treatment" is

18 sufficient to discount a claimant's testimony regarding the severity of an

19 impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v.*

20 *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  Dr. Hutarte suggested Cymbalta and

ORDER - 26

encouraged Plaintiff to be more active. Tr. 450 (citing Tr. 404-05). Dr. Chang

found surgical intervention was not warranted and recommended non-operative

treatment and pain management. Tr. 450 (citing Tr. 379-83). Plaintiff was

encouraged to try physical therapy. Tr. 450-51. Plaintiff reported physical therapy

and over the counter medications were not helping, but his symptoms were stable

for 10 years, and he stated flexibility/stretching helped. Tr. 451 (citing Tr. 341-

42). Plaintiff later reported over the counter medication improved his pain. Tr.

451 (citing Tr. 416). Plaintiff wanted to try epidural injections but did not want to

engage in the required physical therapy to be able to obtain the injections. Tr. 451

(citing Tr. 405). This was a clear and convincing reason, supported by substantial

evidence, to reject Plaintiff's symptom claims.

### 4. Unprescribed Cane

The ALJ found that while Plaintiff used a cane, it had not been prescribed.

Tr. 450. An ALJ may discount a claimant's subjective complaints based on the

unprescribed use of an assistive device, such as a cane. *See Chaudhry v. Astrue*,

688 F.3d 661, 671 (9th Cir. 2012); *see also Tommasetti*, 533 F.3d at 1040.

Plaintiff reported he needed to use a cane, and stated one was prescribed in 2016 or

2017. Tr. 269. However, the ALJ found Plaintiff had not been prescribed a cane.

Plaintiff contends Dr. Drenguis indicated a cane was necessary. ECF No. 8 at 19.

While Dr. Drenguis stated a cane was used, he was an examining provider, not a

treating provider, and did not prescribe a cane.  Dr. Drenguis noted the cane was

not prescribed by anyone.  Tr. 325.  Although there has been documented

abnormal examination findings, including abnormal gait at some exams, the ALJ

reasonably considered the fact that no provider prescribed the use of an assistive

device.  This was a clear and convincing reason to reject Plaintiff's symptom

claims.

### 5. *Activities of Daily Living*

The ALJ found Plaintiff's symptom claims were inconsistent with his

activities of daily living.  Tr. 452.  The ALJ may consider a claimant's activities

that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance

of exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

Despite allegations of disabling limitations, the ALJ found Plaintiff has

remained independent in his activities of daily living, including preparing meals,

ORDER - 28

shopping, and driving.  Tr. 452.  Plaintiff reported in his function report that he

does not need reminders or encouragement to complete tasks, he can lift up to 20

pounds with his left arm, he can handle money and follow instructions, he can go

places independently and get along with others.  Tr. 267-69.  While Plaintiff

reported some difficulties with tasks, he reported to Dr. Drenguis that he could

handle his personal care, lift 30 to 50 pounds, and can climb stairs using a handrail.

Tr. 374.  He reported he can handle household chores in spurts.  *Id.*  He reported he

spends 12 hours per day reclining.  *Id.*  However, Plaintiff told another provider he

spends 22 hours in bed.  Tr. 405.  The ALJ noted Plaintiff has demonstrated

relatively normal strength and mobility, which is inconsistent with the severe

deconditioning that would come with being in bed 22 hours per day.  Tr. 451.  The

ALJ reasonably found Plaintiff's allegations of disabling limitations were

inconsistent with his ability to independently handle his activities of daily living.

This was a clear and convincing reason to reject Plaintiff's symptom claims.

Plaintiff is not entitled to remand on these grounds.

**D. Step Five**

Plaintiff contends the ALJ erred at step five by relying on vocational expert

testimony given in response to an incomplete hypothetical.  ECF No. 8 at 21.

However, Plaintiff's argument is based entirely on the assumption that the ALJ

erred in considering the medical opinion evidence and Plaintiff's symptom claims.

ORDER - 29

*Id.*  For reasons discussed throughout this decision, the ALJ's adverse credibility finding and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Martin O'Malley as Defendant and update the docket sheet.

2. Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

3. Defendant's Brief, **ECF No. 10**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED April 17, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 30